IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,
AND THE STATES OF CALIFORNIA,
COLORADO, CONNECTICUT, DELAWARE,
FLORIDA, GEORGIA, HAWAII, ILLINOIS,
INDIANA, IOWA, LOUISIANA, MARYLAND,
THE COMMONWEALTH OF
MASSACHUSETTS, MICHIGAN,
MINNESOTA, MONTANA, NEVADA, NEW
HAMPSHIRE, NEW JERSEY, NEW MEXICO,
NEW YORK, NORTH CAROLINA,
OKLAHOMA, RHODE ISLAND, TENNESSEE,
TEXAS, VERMONT, THE COMMON-
WEALTH OF VIRGINIA, WASHINGTON,
WISCONSIN, AND THE DISTRICT OF
COLUMBIA,

*ex rel*. ROBERT KOEHLER,

      PLAINTIFFS AND RELATOR,

      v.

KBI BIOPHARMA, INC. and KBI
BIOPHARMA BOULDER, LLC,
Subsidiaries of JSR CORPORATION,

      DEFENDANTS.

CIVIL ACTION NO.

**FALSE CLAIMS ACT
COMPLAINT AND DEMAND
FOR JURY TRIAL**

**FILED IN CAMERA
AND UNDER SEAL**

Robert Koehler ("Relator") brings this action on behalf of the United States of America

("United States") for treble damages and civil penalties arising from the conduct of KBI

Biopharma, Inc. and KBI Biopharma Boulder, LLC, subsidiaries of JSR Corporation

(collectively referred to herein as "Defendants" or "KBI") in violation of the Federal Civil False

Claims Act, 31 U.S.C. § 3729, et seq. ("FCA").  The violations arise out of false claims for

payment made to Medicare, Medicaid, TRICARE, f/k/a CHAMPUS and CHAMPUSVA,

Federal Employees' Health Benefits Program and other federally funded government healthcare programs and pharmacy programs (hereinafter, collectively referred to as "Government Healthcare Programs").  This action is also brought under the *qui tam* provisions of the states of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, the Commonwealth of Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, the Commonwealth of Virginia, Washington, Wisconsin, and the District of Columbia (hereinafter collectively referred to as the "States").

## I.    INTRODUCTION

1.    The Food, Drug and Cosmetic Act (FDCA) prohibits the introduction or delivery for introduction into interstate commerce of any drug that is adulterated. Under the FDCA, a drug is deemed adulterated if the methods used in, or the facilities or controls used for, its manufacturing, processing, packing or holding did not conform to or were not operated or administered in conformity with current good manufacturing practice to assure that such drug met the requirements as to safety and had the identity and strength, and met the quality and purity characteristics, which it purported or was represented to possess.[1]

2.    The American public has a right to expect and indeed demand that its pharmaceutical products be composed of sterile components.  Numerous instances of tainted and unsterile drugs and medications manufactured in the United States have resulted in deaths and serious illnesses.[2]  In one instance it was determined that a "well-respected" prescription drug

---

[1]  https://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm074248.htm

[2]  See e.g. http://www.nbcnews.com/id/41694606/ns/health-infectious_diseases/t/fda-knew-problems-plant-made-tainted-alcohol-wipes/#.WNkzTYWcFPY (Wisconsin plant—one dead,

manufacturer's plant was unfit for human use. In that instance the company allowed rat and rat feces and other contaminants to infect its pharmaceutical products. This discovery came after years of production of tainted products were sold to the American public.[3] While the company paid more than $750 million dollars in fines, the American public was left sickened and unprotected. That case represents only the tip of the iceberg.

3.      KBI Biopharma is a manufacturer of supposedly sterile biopharmaceutical drugs and components with facilities and offices in North Carolina, Colorado and Texas. At least one of its facilities, the Boulder, Colorado plant, fails to meet FDA guidelines and violates several federal laws and regulations.[4] The nonsterile components produced and manufactured by KBI have adulterated medical pharmaceuticals produced by the more than 250 global customers of KBI and sold to the unsuspecting public through government healthcare programs.

4.      This action arises out of a scheme or schemes to defraud the government healthcare programs[5] perpetrated by the defendants, commencing on or before 2014 and continuing to the present.

---

many sickened); https://www.fda.gov/Drugs/DrugSafety/DrugRecalls/default.htm ( recalls by FDA or manufacturers of admittedly tainted products); http://patch.com/illinois/chicago/illinois-company-sold-dog-food-tainted-euthanasia-drug-fda (even pet products are included in tainting.)

[3] https://www.justice.gov/opa/pr/glaxosmithkline-plead-guilty-pay-750-million-resolve-criminal-and-civil-liability-regarding (GSK pleads guilty and pays $750 million dollar fine relating to its adulterated Kytril, Bactroban, Paxil CR and Avandamet products.) Many foreign companies have also been found to have sold adulterated medical products. https://www.fda.gov/ICECI/CriminalInvestigations/ucm433761.htm

[4] See, e.g., 21 CFR 211.22(a); 21 CFR 211.22(c); 21 CFR 211.22(c); 21 CFR 211.25(b); 21 CFR 211.25(c); 21 CFR 211.28(a); 21 CFR 211.28(b), (c) and (d); 21 CFR 211.42(c); 21 CFR 211.113(b). See http://academy.gmp-compliance.org/guidemgr/files/ASEPT_PROCESS_5882FNL.PDF

[5] Although only the states in which Defendants operate are named as Plaintiffs in this complaint, all of the United States and their territories have been affected by these tainted and adulterated biocomponents and pharmaceuticals.

## II.    FEDERAL JURISDICTION AND VENUE

5.    The acts proscribed by 31 U.S.C. § 3729 *et* seq., and complained of herein occurred in the State of Colorado, North Carolina, and Texas and the products were introduced into interstate commerce in the States.  KBI Biopharma, Inc. is a Delaware corporation, registered in the State of Colorado, and operates its production facility located at 2500 Central Ave., Boulder, Colorado 80301 Defendant KBI Boulder, LLC is also a Delaware corporation, registered in Colorado (in default) and may be served at its principal place of doing business 2500 Central Ave., Boulder, Colorado 80301.  Therefore, this Court has jurisdiction over this case pursuant to 31 U.S.C. § 3732 (a), as well as under 28 U.S.C. §1345.

6.    Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because Defendants' operate a biopharmaceutical production plant and have distributed and placed into interstate commerce products in this district.  The Defendants also transact business in Durham, North Carolina and Woodland, Texas.  A substantial part of the acts and omissions proscribed by 31 U.S.C. §3729 *et seq.,* occurred in the State of Colorado.

7.    This court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331 and has personal jurisdiction over the Defendants.

8.    The Court has subject matter jurisdiction over Defendants' violations of the California False Claim Act, Cal. Gov. Code § 12650 et seq.; the Colorado Medicaid False Claims Act, C.R.S.A. § 25.5-4-303.5 et seq.; the Connecticut False Claims Act, Conn. Gen. Stat. Ann. § 17b-301 et seq.; the Delaware False Claims and Reporting Act, 6 Del. C. § 1201 et seq.; the Florida False Claims Act, Fla. Stat. Ann. § 68.081, et seq.; the Georgia Taxpayer Protection False Claims Act, Ga. Code Ann. §23-3-120 et seq.; the Hawaii False Claims Act; HRS § 661-21

4

et seq.; the Illinois False Claims Act, 740 Ill. Comp. Stat.§ 175/1-8; the Indiana False Claims and Whistleblower Protection Act, IC 5-11-5.5- 1 et seq.; the Iowa False Claims Act, I.C.A. § 685.3 et seq.; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:439.1 et seq.; the Maryland False Health Claims Act; MD Code 2-601 et seq.; the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, § 5A et seq.; the Michigan Medicaid False Claim Act M.C.L. §400.601 et seq.; the Minnesota False Claims Act, Minn. Stat. Ann. § 15C.01 et seq.; the Montana False Claims Act, Mont. Code Ann. § 17-8-401 et seq.; the Nevada False Claims Act, Nev. Rev. Stat. Ann. § 357.010 et seq.; the New Hampshire False Claims Act, N.H. Rev. Stat. Ann. §167:612:14b et seq.; the New Jersey False Claims Act, N.J. Stat. Ann.§ 2A:32C-1 et seq.; the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 et seq.; the New York False Claims Act, N.Y. State Fin. Law§ 187 et seq.; the North Carolina False Claims Act, N.C.G.S.A. §1-605 et seq.; the Oklahoma Medicaid False Claims Act, Okla. Stat. Ann. 63 §5053. l et seq.; the Rhode Island State False Claims Act, R.I. Gen. Laws § 9-1.1-1 et seq.; the Tennessee False Claims Act, T.C.A. § 71-5-182(a) et seq.; the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. § 36.001 et seq.; the Vermont False Claims Act, 32 V.S.A. § 630 *et seq.*; Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01216.1 et seq.; the Washington Medicaid Fraud False Claims Act, RCWA 74.66.005 et seq.; the Wisconsin False Claims for Medical Assistance Law, Wis. Stat. § 20. 931; and the District of Columbia False Claims Act, D.C. Code Ann.§ 2-381.01 et seq., pursuant to 31 U.S.C. § 3732(b) because Defendant's violations of the State False Claims Acts and the federal FCA arise out of a common nucleus of operative fact.  See also 31 U.S.C. § 3732(b) (granting district court's jurisdiction over any action brought under the laws of any state for the recovery of funds paid by a state if the

5

action arises from the same transaction or occurrence as an action brought under the federal FCA).

9.      The facts and circumstances alleged in this complaint have not been publicly disclosed in a criminal, civil or administrative hearing, nor in any congressional, administrative, or government accounting office report, hearing, audit investigation, or in the news media.

10.     Relator is an "original source" of the information upon which this complaint is based, as that term is used in the False Claims Act.

**III.    PARTIES**

11.     The United States funds the provision of medical care and pharmaceutical drugs through Government Healthcare Programs such as Medicare, Medicaid, Federal Employees' Health Benefits Program, TRICARE/CHAMPUS, CHAMPVA, and other agencies and programs, acting through the Centers for Medicare & Medicaid Services ("CMS") within the U.S. Department of Health and Human Services ("HHS"), the Department of Defense, and other federal agencies.

12.     The States contribute funds and operate Medicaid and other pharmacy and healthcare services for the citizens of their states, commonwealths and the District of Columbia.

13.     Relator is a citizen of the United States and resident of the State of Colorado.  He is a graduate of the Harvard University Divinity School with approximately ten years of experience in the pharmaceutical industry.  Relator worked at the KBI Biopharma - Boulder plant as a Senior Associate.  He worked on the production floor and was responsible for verifying cleaning and compliance activities and the completion of checklists.  He was employed from August through December 2016.

14.    Relator reported his concerns about the fraudulent misconduct by Defendants first to his superiors who ignored his concerns.  He then communicated the fraud to the Department of Health and Human Services, Food and Drug Administration on December 19, 2016, and he has provided extensive information to assist their investigation.

15.    Defendant KBI is a self-proclaimed "contract development" and manufacturing organization serving the biopharmaceutical industry with 250 global clients.  Its capabilities include cell line development, process analytical and formulation development, clinical manufacturing and commercial manufacturing.[6]  It provides "a broad range of cGMP[7] biologics manufacturing services to biopharmaceutical companies worldwide.  [KBI]'s capabilities include reliable manufacturing for preclinical, clinical and commercial supply." [8] KBI produces therapeutics and vaccines through processes developed in-house or through processes transferred in from their clients.

16.    Defendant JSR is a Japanese multibillion dollar company, publically traded on the Tokyo stock Exchange, which, in 2015, purchased more than 51% of the shares of KBI.

---

[6]  http://www.kbibiopharma.com/

[7]  CGMP refers to the Current Good Manufacturing Practice regulations enforced by the US Food and Drug Administration (FDA).  CGMPs provide for systems that assure proper design, monitoring, and control of manufacturing processes and facilities.  Adherence to the CGMP regulations assures the identity, strength, quality, and purity of drug products by requiring that manufacturers of medications adequately control manufacturing operations.  This includes establishing strong quality management systems, obtaining appropriate quality raw materials, establishing robust operating procedures, detecting and investigating product quality deviations, and maintaining reliable testing laboratories.  This formal system of controls at a pharmaceutical company, if adequately put into practice, helps to prevent instances of contamination, mix-ups, deviations, failures, and errors.  This assures that drug products meet their quality standards.

[8]  http://www.kbibiopharma.com/our-resources/cgmp-manufacturing-preclinical-clinical-commercial-supply

## IV.    INDIVIDUAL PARTICIPANTS

17.    Timothy M. Kelly, Ph.D. is and was KBI Biopharma, Inc.'s Executive Vice President of Operations, Development and Manufacturing for North Carolina and Colorado.

18.    Kathy S. Less is and was KBI Biopharma's Senior Vice President for Quality and Regulatory matters.  She is responsible for FDA inspections.

19.    Dirk T. Lange is and was the Senior Vice President for Operations at the Boulder plant.  He is the person responsible for all operations at the Boulder, Colorado facility.

20.    Tina Roberson is and was the Director of Manufacturing Compliance at the KBI Boulder plant.  Relator communicated directly with Roberson documenting the many deficiencies he observed at the facility.

21.    Mike Landau is and was the Vice President of Manufacturing at the Boulder plant.  Relator also communicated to Landau the observed violations and documented the many deficiencies Relator found.

22.    Charles Given is an employee of KBI and was Relator's manager.  He directed Relator to falsify logs books and training records in order to disguise and hide violations that permitted adulterated products to be placed in commerce.  Given made it known that he was authorized to direct this falsification from the highest levels of KBI.

23.    Terrence Vinson is and was a compliance consultant hired by KBI to help them pass the FDA pre-approval PAI inspection in 2016.  Vinson accompanied the Relator on many of the inspections and identified the many FDA violations and deficiencies which he and Relator discovered and documented.  Relator and Vinson discussed these adulterating violations with

Roberson, Landau and Johnson. Vinson was terminated immediately before the FDA inspectors began to conduct their inspection in December of 2016.

24.    Matt Johnson is and was the Assistant to the Vice President of Manufacturing for the Boulder plant. When Relator attempted to complete a compliance checklist inspection of plant standards, Johnson told Relator that "checklists are a waste of time."

## V.    THE FALSE CLAIMS ACT

25.    The False Claims Act (hereinafter referred to as "FCA"), 31 USC § 3729, was originally enacted in 1863, and was substantially amended in 1986 by the False Claims Amendments Act, Pub.L. 99-562, 100 Stat. 3153. The FCA was further amended in May 2009 by the Fraud Enforcement and Recovery Act of 2009 ("FERA") and again in March 2010 by the Patient Protection and Affordable Care Act ("PPACA"). Both FERA and PPACA made a number of procedural and substantive changes to the FCA in an attempt to ease the burden on the government and Relators in investigating and prosecuting *qui tam* suits under the FCA.

26.    The False Claims Act generally provides that any person who knowingly presents, or causes to be presented, false or fraudulent claims for payment or approval to the United States Government, or knowingly makes, uses, or causes to be made or used false records and statements material to a false claim, or conspires to engage in such conduct, is liable for a civil penalty ranging from $5,500 up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Federal Government. The States' false claims acts are also implicated by Defendants' fraudulent conduct: the California False Claim Act, Cal. Gov. Code § 12650 et seq.; the Colorado Medicaid False Claims Act, C.R.S.A. § 25.5-4-303.5 et seq.; the Connecticut False Claims Act, Conn. Gen. Stat. Ann. § 17b-301 et seq.; the Delaware False

Claims and Reporting Act, 6 Del. C. § 1201 et seq.; the Florida False Claims Act, Fla. Stat. Ann. § 68.081, et seq.; the Georgia Taxpayer Protection False Claims Act, Ga. Code Ann. §23-3-120 et seq.; the Hawaii False Claims Act; HRS § 661-21 et seq.; the Iowa False Claims Act, I.C.A. § 685.3 et seq.; the Illinois False Claims Act, 740 Ill. Comp. Stat.§ 175/1-8; the Indiana False Claims and Whistleblower Protection Act, IC 5-11-5.5- 1 et seq.; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:439.1 et seq.; the Maryland False Health Claims Act; MD Code 2-601 et seq.; the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, § 5A et seq.; the Michigan Medicaid False Claim Act M.C.L. §400.601 et seq.; the Minnesota False Claims Act, Minn. Stat. Ann. § 15C.01 et seq.; the Montana False Claims Act, Mont. Code Ann. § 17-8-401 et seq.; the Nevada False Claims Act, Nev. Rev. Stat. Ann. § 357.010 et seq.; the New Hampshire False Claims Act, N.H. Rev. Stat. Ann. §167:612:14b et seq.; the New Jersey False Claims Act, N.J. Stat. Ann.§ 2A:32C-1 et seq.; The New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 et seq.; the New York False Claims Act, N.Y. State Fin. Law§ 187 et seq.; the North Carolina False Claims Act, N.C.G.S.A.  §1-605 et seq.; the Oklahoma Medicaid False Claims Act, Okla. Stat. Ann. 63 §5053. l et seq.; the Rhode Island State False Claims Act, R.I. Gen. Laws § 9-1.1-1 et seq.; the Tennessee False Claims Act, T.C.A. § 71-5-182(a) et seq.; the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. § 36.001 et seq.; the Vermont False Claims Act, 32 V.S.A. § 630 *et seq.*; Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01216.1 et seq.; the Washington Medicaid Fraud False Claims Act, RCWA 74.66.005 et seq.; the Wisconsin False Claims for Medical Assistance Law, Wis. Stat. § 20. 931; and the District of Columbia False Claims Act, D.C. Code Ann.§ 2-

381.01 et seq. are based upon the federal model and provide for the same or similar penalties and rewards for Relators.

27.     The Acts allows any person having information about false or fraudulent claims to bring an action for himself or herself and the Government, and to share in any recovery.  Based on these provisions, Relator seeks, through this action, to recover all available damages, civil penalties, and other relief for the state and federal violations alleged herein.

## VI.     FEDERAL HEALTHCARE PROGRAMS

28.     In 1965, Congress enacted Title XVIII of the Social Security Act (known as "Medicare" or the "Medicare Program") to pay for the cost of certain medical services and care. Entitlement to Medicare is based on age, disability or affliction with certain diseases.  See 42 U.S.C. §§1395 to 1395ccc.  Outpatient prescription drugs are covered under Parts A-D of the Medicare Program.

29.     In 1965, the Federal Government also enacted the Medicaid program.  Medicaid is the nation's medical assistance program for the needy, the medically-needy aged, blind, and disabled and families with dependent children.  42 U.S.C. §§ 1396-1396v.  Medicaid is largely administered by the states and funded by a combination of federal and state funds.  Medicare is the nation's health program for persons over 65 and the disabled.  Medicare is funded by the Federal Government.

30.     Under the Medicare Act, 42 U.S.C. § 1395y(a)(1)(A), there is an express fundamental condition of payment: "no payment may be made [under the Medicare statute] for any expenses incurred for items or services which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury."  This condition links each Medicare payment to the

requirement that the particular item or service be "reasonable and necessary." Medicaid and other federally funded programs restrict coverage under the same principle.

31.    Medicare and the other federally funded programs require the submission of documented and properly coded claims which include the implied or express representation that the medical treatment, surgery or procedure was medically necessary and that patient admission and retention meets the mandated criteria.

## VII.    SUBSTANTIVE CLAIMS

32.    Plaintiffs and Relators incorporate the foregoing paragraphs herein as if fully set forth.

33.    The Defendants represented to the Government Healthcare programs and their customers who sold pharmaceuticals to the government, among other things, that:

> Our state of the art manufacturing facilities *meet global regulatory requirements* and employ the latest disposable production technologies, allowing for maximum flexibility and short turn-around times. [Emphasis supplied.] Our cell culture and microbial manufacturing facilities are fully separated including independent utility systems serving only their assigned production areas. Multiple HVAC zones, unidirectional flow of personnel and materials and strict environmental monitoring schema ensure the highest environmental quality for your process.[9]

34.    KBI made and caused to be made to the United States and the States, false claims for payment for prescription drugs covered by Medicare, State Medicaid programs, the Depart-

---

[9] http://www.kbibiopharma.com/our-resources/cgmp-manufacturing-preclinical-clinical-commercial-supply

ment of Veterans Affairs, the Public Health Service and other federal, state and city purchasers of prescription drugs.

35.    The claims were false and fraudulent because the drugs, which were manufactured at Defendants' plant in Boulder, CO, were not manufactured in accordance with FDA approved processes, and/or did not come with the assurance of quality and purity required for distribution to patients; and/or approvals for the drugs were obtained through false representations to the FDA.  The false claims arose out of chronic, serious deficiencies in the quality assurance function at the Boulder plant and the defendants' ongoing serious violations of the laws and regulations designed to ensure the fitness of drug products for use, including the Federal Food, Drug and Cosmetics Act, 21 U.S.C. §§ 301 *et seq.*, and the Code of Federal Regulations, Title 21.

36.    Some of the federal standards that were not met include, but are not limited to:

**21 CFR 211.22(a)** "There shall be a quality control unit that shall have the responsibility and authority to approve or reject all components, drug product containers, closures, in-process materials, packaging material, labeling, and drug products, and the authority to review production records to assure that no errors have occurred or, if errors have occurred, that they have been fully investigated. The quality control unit shall be responsible for approving or rejecting drug products manufactured, processed, packed, or held under contract by another company."

**21 CFR 211.22(c)** "The quality control unit shall have the responsibility for approving or rejecting all procedures or specifications impacting on the identity, strength, quality, and purity of the drug product."

**21 CFR 211.25(a)** "Each person engaged in the manufacture, processing, packing, or holding of a drug product shall have education, training, and experience, or any combination thereof, to enable that person to perform the assigned functions. Training shall be in the particular operations that the employee performs and in current good manufacturing practice (including the current good manufacturing practice regulations in this chapter and written procedures required by these regulations) as they relate to the employee's functions. Training in current good manufacturing practice shall be conducted by qualified individuals on a continuing basis and with sufficient frequency to assure that employees remain familiar with CGMP requirements applicable to them."

**21 CFR 211.25(b)** "Each person responsible for supervising the manufacture, processing, packing, or holding of a drug product shall have the education, training, and experience, or any combination thereof, to perform assigned functions in such a manner as to provide assurance that the drug product has the safety, identity, strength, quality, and purity that it purports or is represented to possess."

**21 CFR 211.25(c)** "There shall be an adequate number of qualified personnel to perform and supervise the manufacture, processing, packing, or holding of each drug product."

**21 CFR 211.28(a)** "Personnel engaged in the manufacture, processing, packing, or holding of a drug product shall wear clean clothing appropriate for the duties they perform. Protective apparel, such as head, face, hand, and arm coverings, shall be worn as necessary to protect drug products from contamination."

**21 CFR 211.28(b)** "Personnel shall practice good sanitation and health habits."

**21 CFR 211.28(c)** "Only personnel authorized by supervisory personnel shall enter those areas of the buildings and facilities designated as limited-access areas."

**21 CFR 211.28(d)** "Any person shown at any time (either by medical examination or supervisory observation) to have an apparent illness or open lesions that may adversely affect the safety or quality of drug products shall be excluded from direct contact with components, drug product containers, closures, in-process materials, and drug products until the condition is corrected or determined by competent medical personnel not to jeopardize the safety or quality of drug products. All personnel shall be instructed to report to supervisory personnel any health conditions that may have an adverse effect on drug products."

**21 CFR 211.42(c)** "Operations shall be performed within specifically defined areas of adequate size. There shall be separate or defined areas or such other control systems for the firm's operations as are necessary to prevent

contamination or mix-ups during the course of the following procedures: * * * (10) Aseptic processing, which includes as appropriate: * * * (iv) A system for monitoring environmental conditions * * *."

**21 CFR 211.113(b)** "Appropriate written procedures, designed to prevent microbiological contamination of drug products purporting to be sterile, shall be established and followed. Such procedures shall include validation of any sterilization process."

37.    Relator has included specific details of those deviations and contaminations in his Disclosure Memorandum.

38.    KBI makes only Biologics - mostly injectable - so contamination is a critical issue. The FDA expects and laws and regulations mandate that good manufacturing procedures be implemented and followed by companies such as KBI. The drugs and chemical components produced and the equipment utilized at the KBI Boulder plant, were not produced and maintained in an *aseptic*[10] environment, were stored improperly, production processes were not sterile and the drugs were in other ways contaminated.

---

[10]  The FDA instructs:  There are basic differences between the production of sterile drug products using aseptic processing and production using terminal sterilization.

Terminal sterilization usually involves filling and sealing product containers under high-quality environmental conditions. Products are filled and sealed in this type of environment to minimize the microbial and particulate content of the in-process product and to help ensure that the subsequent sterilization process is successful. In most cases, the product, container, and closure have low bioburden, but they are not sterile. The product in its final container is then subjected to a sterilization process such as heat or irradiation.

In an aseptic process, the drug product, container, and closure are first subjected to sterilization methods separately, as appropriate, and then brought together. Because there is no process to sterilize the product in its final container, it is critical that containers be filled and sealed in an extremely high-quality environment.  Aseptic processing involves more variables than terminal

39.    The defective adulterated products produced by KBI include, but are not limited to, Trypsin,[11] Enzo, Apex, and Betasso.

40.    KBI's Boulder plant utilized *expired* Chex-All Sterilization Pouches manufactured by Propper Manufacturing Company in the pharmaceutical production process.

41.    Relator believes that Trypsin and Betasso, for example, are among the chemicals used by Merck[12] to manufacture many of its pharmaceuticals.

42.    KBI also provided its products to Auxillium Pharmaceuticals (acquired by Endo International), DynPort Vaccine (a CSC company), Elusys Therapeutics, Trans Tech Pharma, and UCB Celltech, among others.

43.    KBI, in conjunction with Coheres Biosciences, is currently producing CHS-1701 at the Boulder plant.  CHS-1701 is biosimilar to Amgen's Neulasta.  Relator advises that KBI

---

sterilization. Before aseptic assembly into a final product, the individual parts of the final product are generally subjected to various sterilization processes.  For example, glass containers are subjected to dry heat; rubber closures are subjected to moist heat; and liquid dosage forms are subjected to filtration.  Each of these manufacturing processes requires validation and control. Each process could introduce an error that ultimately could lead to the distribution of a contaminated product.  Any manual or mechanical manipulation of the sterilized drug, components, containers, or closures prior to or during aseptic assembly poses the risk of contamination and thus necessitates careful control.  A terminally sterilized drug product, on the other hand, undergoes final sterilization in a sealed container, thus limiting the possibility of error.

*Sterile drug manufacturers should have a keen awareness of the public health implications of distributing a nonsterile product.  Poor CGMP conditions at a manufacturing facility can ultimately pose a life-threatening health risk to a patient.*   [Emphasis supplied.]
https://www.fda.gov/downloads/Drugs/.../Guidances/ucm070342.pdf

[11]   Trypsin [trip´ sin] A pancreatic enzyme that catalyzes the hydrolysis of proteins to form smaller polypeptide units.  **tryp´tic** (-tĭk) *adj.*The American Heritage® Medical Dictionary Copyright © 2007, 2004 by Houghton Mifflin Company. Published by **Houghton Mifflin Company**. All rights reserved.

[12] Merck & Co., Inc. is a major producer of pharmaceuticals and is publically traded on the NYSE. It employs more than 68,000 people worldwide and its revenue for 2016 was in excess of $39.8 billion dollars.

was making Engineering Runs of CHS-1701 at the Boulder plant for final FDA approval and these batches did not meet FDA GMP or GDP regulations and deviations were not documented in the batch records.

44.     Compliance checklists were created for KBI by industry consultants to help them pass an upcoming FDA pre-approval Biologics License Application to market a new product – likely CHS-1701 and Betasso).  These checklists and noted deficiencies were reviewed by Mike Landau, Vice-President of Manufacturing and Matt Johnson, Assistant to the Vice-President of Manufacturing and the consultants that created them.  The consultants were hired by KBI to help them pass the FDA inspection.

45.     Although KBI is supposedly an aseptic plant and the Relator carefully documented the many deficiencies he found, no corrective action was taken by KBI.  In fact, management told Relator that these checklists to ensure compliance with federal regulations were a "waste of time."

46.     To help KBI pass this critical inspection, the Relator was directed to falsify log books and training records.  For example, one falsified training document submitted by the Relator falsely claimed that he had been trained on about 17 processes but the underlying documents all lack a trainer's certification.

47.     Employees knowledgeable about these many compliance deficiencies were intentionally segregated and not allowed to interact with the FDA inspectors.

48.     Prior to the FDA's inspection, Relator was directed by Charles Given, Relator's manager, to falsify log books and training records regarding compliance procedures.

49.     Relator observed shocking violations of sanitary and basic pharmaceutical manufacturing standards at the KBI Biopharma Boulder plant.

50.     In about November of 2016, Relator observed a black substance coming out of the purified high temperature water for injection line (WFI).  These purified water lines are used for buffers and titrations.  Relator immediately advised Matt Johnson, Assistant to the Vice President of Manufacturing for the Boulder plant, who told him, "It's not your problem." Nothing was done by KBI and it took three weeks before a pacification company from Kansas was called in to assess the problem.  During the interim production continued.

51.     When the pacification company came to the plant, it was shut down for at least a week while the lines were purged and the problem resolved.  Relator believes that this incident went unreported or documented as did most of the violations.

52.     "Change Control" procedures require that consumables - including chemicals – be removed from the suites after the production of each batch.  After change control, however, Relator would always find opened chemical bottles such as 70% IPA in fermentation, buffer bottles, potassium chloride and hydrochloric acid.  KBI did not follow its mandated change control procedures and took no corrective action after Relator brought these critical problems to KBi's attention.

53.     Relator found that expired PH solutions were used to calibrate PH meters, making their readings suspect.  No deviations were ever documented in the batch records.

54.     Relator found food and gum in the Seed Prep Room where the fermentation process is started and media inoculation is performed.  The Seed Prep Room should be a sterile environment.  Relator documented these deviations on the compliance checklists. No changes

were made despite this reporting.

55.    KBI did not document or investigate the use of expired chemicals.    No material deviations were documented as required, in the batch records.

56.    Pest activity at the plant was only documented irregularly. Relator is not aware of corrective action being taken.  Many insects were found in the plant such as Box Elder Beetles, spiders, and wasps.  These insects are contaminants and adulterate KBI's production processes. When insects were observed, the area where the pests are found was not cleaned.  This failure to maintain a sterile environment adulterated the products produced by KBI and incorporated by pharmaceutical companies into their drugs.

57.    Employees failed to cover their beards and routinely opened their gowns to use their cellular telephones while working in "aseptic" areas of the plant.  These actions violate regulations and contaminate the premises and products.

58.    Employees with colds and open abrasions worked in "aseptic" areas of the plant. Management failed to train staff to be aware of the contamination caused by illnesses and open wounds.

59.    Research & Development and Good Manufacturing Process products and pharmaceuticals used for the production of end products were manufactured on the same lines thereby cross contaminating the products and violating federal standards.

60.    Lot numbers and expiration dates were not documented on batch records.

61.    Equipment logs did not document when vessels were left open for extended periods of time.  Vessel log books reflected that they had been cleaned when, in fact, Relator found water and residue in them (evidence that they had not been cleaned at all or not properly

cleaned due to intentional failure or lack of proper training.)  The vessels were not re-cleaned before use as required.

62.    In November, prior to the FDA pre-approval PAI Application inspection, there was a concerted rush effort to sign off on equipment logs although many had not been reviewed for at least ten months.

63.    During the FDA inspection regular employees were removed from the lines and replaced with others KBI employees who could be trusted not to reveal any of the concealed deficiencies.  The regular employees were hidden.  KBI management sent text messages directing these employees to avoid areas where inspectors were working.

64.    Drug products that were previously manufactured remained in production areas when a different drug was being produced.  Change Control regulations require that the room be cleaned of products that are not in production.

65.    Relator believes that filter housings in the "Grey Space" room and in "Refold" are not taken off line and cleaned.  Their filters are not routinely tested.

66.    Plant pumps do not have a log book and are not cleaned.

67.    There is virtually no training for KBI employees on equipment operation and aseptic compliance procedures.

68.    Air flowed freely between Glass Wash and Fermentation and Glass Wash and Purification.  Small parts were moved through the Glass Wash pass-throughs and placed back in Glass Wash.

69.    In or about October, 2016, Relator discovered that there were about 20 years' worth of expired autoclave pouches (Chex-All Sterilization Pouches) stored in the autoclave

room, clean glass wash, and in the Consumables storage room.  The large majority of these pouches were manufactured in January 2010 and all were more than five years old.  The large majority of pouches expired in January of 2015.

70.      Relator contacted the manufacturer, Propper Manufacturing, Inc., and was told the pouches expired after 60 months.

71.      All batch records dating back to at least January 2015 should have deviations written onto them for the possible use of expired autoclave pouches.  This was never done.  Although management was aware of the expired pouches, it endorsed their continued use.

72.      Autoclave pouches are used to sterilize equipment such as scissors, hemostats and tubing.  Sterilization requires that the pouches have a good seal.  Because of their age, Relator observed that these expired autoclave pouches could not seal properly and sterilization of the equipment could not be assured.  There was only one box of 12' x 18" Chex-All Sterilization Pouches in the plant Consumables Room that were not expired.  All of the other pouches in the plant were long-expired autoclave pouches kept in a cabinet in the area known as the "Gray Space."  Those pouches are used by Validation and Relator marked them expired.

73.      Relator notified KBI management including Given, Roberson, Landau, Johnson and the supply chain - individuals that order new products.  Relator threw away four large garbage bags filled with expired Chex-All Sterilization Pouches.  Relator believes that no deviations were entered for the many chemical batches made while using expired autoclave pouches nor were KBI customers notified.

74.      Matt Johnson told Relator that it was not necessary to document deviations in the batch records because doing so would delay drug approval by the FDA.

75.     In October 2016, Relator found that approximately half of the sterile gloves in the Consumables Room were expired.  Relator also found that approximately 90% of the sterile gloves in the Seed Prep Room and Bulk Fill Room (gloves used in the hoods) had expired in years before, in 2014.

76.     KBI practice did not include checking the expiration dates for allegedly "sterile gloves."  Relator notified Given, Roberson, Landau and the Supply Chain about these unsterile and likely unsanitary gloves that had been used for a lengthy period of time by KBI.  Relator threw away more than 50 pounds of expired "sterile" gloves.

77.      Although KBI's Boulder plant is supposed to be "aseptic," Relator is sure that no deviations were entered for the many batches made while KBI staff used expired "sterile" gloves and that KBI customers were not contacted.

78.     Expired gloves, that were supposed to be sterile, were used during the pharmaceutical production process including the production of Trypsin, Enzo, and Apex.  The expired sterile gloves were noted by the Relator on the Manufacturing and Compliance Checklists, but they were not incorporated into the batch records by KBI management.

79.     Relator found that NaOH, Acetic Acid, and Hydrochloric Acid bottles used in making buffers and for titrations in Fermentation, Refold, and Purification were also expired. All buffers and titrations are suspect if made with expired chemicals.  The use of anything that is expired during a batch production requires a deviation be written into the batch records.  This was never done at KBI.

80.     Expired chemicals were used by KBI during the pharmaceutical production process including but not limited to production of Trypsin, Enzo, Apex, and Betasso.  The expired chemicals were noted on the Manufacturing and Compliance Checklists by Relator.

81.     On an almost daily basis, Relator found expired Potassium Chloride bottles, used as storage solution (and for other uses), for the Conductivity meter probes in Fermentation, Refold, and Purification.  Therefore, readings from the Conductivity meters are suspect.

82.     Expired Potassium Chloride was used during the pharmaceutical production process including the production of Trypsin, Enzo, Apex, and Betasso.  Relator documented the expired chemicals on the Manufacturing and Compliance Checklists but this deviation was never written into the batch records by KBI management.

83.     Relator discovered that expired pH (1.68, 4.0. 7.0, and 10.0) bottles, were used daily to calibrate the pH meters.  Therefore, readings from the pH meters are suspect.  Relator documented the expired chemicals on the Manufacturing and Compliance Checklists but this deviation was never written into the batch records.

84.     The chemical pump in KBI's Boulder plant Fermentation room, which is used in making buffers, sits on the plant floor.  The pump was not cleaned during the months that he worked at KBI.  The pump does not have a logbook nor is it ever given a Cleaned, Expired, Dirty, or In-Process Label.  Relator believes he is the only person that has ever cleaned the pump.  Relator put it inside plastic bags, labeled it cleaned, and placed it in a cabinet in Fermentation.

85.     Dirty pumps are used daily in the pharmaceutical production process including by not limited to the production of drugs Trypsin, Enzo, Apex, and Betasso.  Relator documented

this issue on the Manufacturing and Compliance Checklists but a deviation was never recorded in batch records by KBI management.

86.    Relator found food and chewing gum in the Seed Prep Room.  This was noted on the Manufacturing and Compliance Checklists but ignored by KBI management.

87.    Large 19-liter containers of NaOH and Hydrochloric Acid are often found sitting directly on the plant floor without secondary containment.  This risks contamination and Relator documented it on the Manufacturing and Compliance Checklists.  Relator's complaints to management and documentation of these risks were ignored.

88.    Plastic bags containing powder components for Betasso sit on the plant floor before being dispensed into tanks.  This presents a serious risk of contamination and Relator documented it on the Manufacturing and Compliance Checklists.  Relator's complaints to management and documentation of these risks were ignored.

89.    Expired clean parts are continually found in Fermentation, Refold, and Purification and are often used on process equipment.  Expired parts were used during the pharmaceutical production process including the production of Trypsin, Enzo, Apex, and Betasso.  This was noted on the Manufacturing and Compliance Checklists but never written into the batch records.

90.    Tanks were often designated as "Cleaned" and "Visually" inspected but Relator often found up to 40 kilograms of solvent inside.  This reflects that the tanks were neither cleaned nor properly inspected.

91.    Tanks are often left sitting for days with standing PW or WFI water and are not rinsed or Cleaned in Place with caustic chemicals before use.  This was noted on the

Manufacturing and Compliance Checklists but ignored by KBI management.

92.    In October 2016, Relator examined all the small parts in Clean Glass Wash and removed approximately half the parts as they were expired clean.  Relator also removed all the expired parts from Clean Glass Wash three days before the FDA inspection.  This was noted on the Manufacturing and Compliance Checklists but not discovered by FDA inspectors.

93.    Waste containers are sometimes stored with unused chemicals in acid/base storage cabinets.  Relator brought this to management's attention by noting it on the Manufacturing and Compliance Checklists.  No changes were made to this improper storage.

94.    Acids and Bases are often stored together in the same cabinet at KBI's Boulder plant.  A Base cabinet was finally placed in Buffer Prep and in Purification after numerous requests by the Relator.  This was noted on the Manufacturing and Compliance Checklists.

95.    Relator found waste containers comingled with containers with product, sitting for weeks throughout the plant.  This was noted on the Manufacturing and Compliance Checklists but no changes were initiated by KBI management.

96.    The CHR-509-001, chromatography skid, had equipment with expired calibration during the pharmaceutical production process including the Enzo run.  Relator notified management but was told by Matt Johnson and his former supervisor, Robb Marrs that "calibration did not matter."  Relator documented this on the Manufacturing and Compliance Checklists but the deviation was never written into the batch records.

97.    Relator found that equipment and parts are used nearly every day before sample results have been obtained.  For example, sample results are rarely obtained for small parts cleaned in the glass wash.  The parts are "Conditionally released" and often an entire cycle of

small parts is Conditionally Released without sample results ever being taken. This failure to protect the integrity of production can be verified by checking the log sheets for the parts washer which ostensibly documents the Controlled Form System, sample numbers and matches this to the database of reported CFS number and results. Expired Conditionally Released parts, many of which never had sample results, were used during the pharmaceutical production process including the production of Trypsin, Enzo, Apex, and Betasso. This deviation was never written into the batch records by KBI management.

98.     Employees are required to spray off their gloves with 70% Isopropyl alcohol (IPA) before entering the suites. The IPA solution is routinely beyond expiration date. This was noted on the Manufacturing and Compliance Checklists. The expired spray violated code requirements and subjected the products to tainting and adulteration.

99.     Processes hose ends are rarely covered with bioshields and hoses are often left on the floor and are not cleaned before use. This risks contamination of the hose and any product made with it. This was noted on the Manufacturing and Compliance Checklists by Relator and ignored or permitted by KBI management.

100.    PW and WFI hose ends are rarely covered with bioshields and the hoses are often left on the floor and are not cleaned before use. Relator informed management of this.

101.    Relator informed management that PW and WFI purified water lines are not always drained after being used.

102.    After tanks are cleaned, the manways are frequently left open to air dry for more than 24 hours before a visual inspection. As a result, they are dirty and cannot be used without

being cleaned again or even rinsed.  Nonetheless they were used without additional cleaning or rinsing. Relator informed management of this but the practice continues.

103.    Relator found sample labels from Apex and Enzo batches comingled in the suites when KBI was producing Betasso.  Relator found older Betasso sample labels in the suites while producing later Betasso batches.  Although these deviations happened regularly, Relator is aware of only one deviation that was documented.

104.    Relator has never seen employees inspect equipment for cleanliness immediately before being used.

105.    The Filter housings in the Gray Space, Refold, and some on Fermentation are removed before being cleaned in place.  As a result, these filter housing are not cleaned before being used again.

106.    KBI does not follow minimum standard aseptic practices.  Employees put on gloves after handling their gowns and boot covers with their bare hands.  Employees should put on gloves to then put on their gowns and boot covers and then change gloves to a new pair. Relator informed management of this training and enforcement failure but no remedial action was taken.

107.    Relator found that weighed components with the same Item #, but different Lot #s and expiration dates, are placed in the same plastic bag/container.

108.    Relator frequently removed expired RODAC plates from Seed Prep.  RODAC plates are used to takes samples from an Associate's gown - usually different places on the sleeves - when they have been working in the most sensitive hoods.  These samples show if there is contamination on the gown which could mean the product has become contaminated.  When

28

using expired RODAC plates all results are suspect. Relator notified management but this deviation was never documented in batch records.

109. Relator listed dozens of other regularly occurring violations on the Manufacturing and Compliance Checklists. These checklists and Relator's complaints were routinely ignored by management.

110. Fermentation, Refold, and Purification areas were in violation of GMPs every day until December 2-4, 2016, the weekend before the FDA PAI inspection. The suites were then cleaned and straightened immediately before the inspection.

111. On the weekend before the pre-inspection clean up began; Relator noted forty-one (41) GMP/Safety infractions on the Manufacturing and Compliance Checklist for Fermentation and more than twenty (20) infractions for Refold. For example, on December 4th Relator found three bottles of Acetone which had expired in 2008, in a new flam cabinet in the Consumables Room. Acetone is not used in the plant at all and the bottles were not in the cabinet the previous week. Relator advised management.

112. The FDA PAI Auditors were never told that Employees receive virtually no training on GMP, equipment and processes.

113. Relator received virtually no training while at KBI and often worked alone on projects. The weekend before the FDA inspection he was forced by management to prepare and sign a training form to falsify the training that he received. Relator believes that other KBI employees similarly signed falsified training documents.

114. For example, on December 8, 2016, a 23-year old Associate worked with the Relator for less than 10 minutes on the CHR-509-001, Chromatography skid. The manager

signed him off as trained on the equipment even though the Associate had never actually operated the CHR-509-001 before, never worked through the hours of cleaning and never operated the skid during processing.

115.    During the 2016 FDA inspection the auditors were in Purification and Refold watching KBI employees working with equipment and processes.  Most of these KBI workers were old trusted employees from Technical Operations and not the Associates who generally work on the plant floor.  The regular floor staff was told not to enter Purification while the FDA auditors were in the plant.  They were actually hidden and not allowed to interact with the FDA auditors.  This was done to prevent the regular staff, which consisted of mostly newer and younger employees, from revealing the many deficiencies and problems to the FDA inspectors.

116.    When FDA auditors were watching Refold employees operating the COL-527-001 (the Filter Column used to refold proteins and some filtering/purification), the only gauge (PI-527-001) on the Column was out of calibration.  The gauge had not been calibrated since its expiration in November 2016.  Equipment is often operated out of calibration and the FDA did not discover this deficiency.  Relator had notified management of this deficiency although it was never documented in the plant's records and never corrected before the FDA inspection.

117.    As a result of these fraudulent policies and practices, KBI submitted and caused to be submitted false claims to the government resulting in the government paying out funds they otherwise would not have paid, and unlawfully enriching the Defendants.

## VIII. CAUSES OF ACTION

### COUNT ONE

**FALSE CLAIMS ACT**
**FALSE CLAIM FOR PAYMENT OR APPROVAL**
**31 U.S.C.  §3729(a)(1)(A) and (C) (2010)**

118.    Relator repeats and realleges each allegation contained in paragraphs 1 through 117, above as if fully set forth herein.

119.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended.

120.    Defendants, by and through their (its) officers, agents, employees, related companies, subsidiaries and holding companies, knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A)(2010).

121.    Defendants, by and through their (its) officers, agents, and employees, authorized and encouraged the actions of their (its) various officers, agents, and employees to take the actions set forth above.

122.    As a result of the acts of Defendants, the United States Government and the States reimbursed the Defendants (or their "clients" who used these adulterated products in their drug products) for tainted, contaminated and adulterated biopharmaceutical products and ingredients.

123.    Every statement, billing and claim for payment submitted to the federal healthcare programs, for each and every pharmaceutical, compounded medication and vaccine produced by KBI or used by other pharmaceutical companies in their medicines, drugs, ointments and vaccines represents a false or fraudulent statement.

124.    By reason of Defendants' acts, the United States and the States have been damaged, and continue to be damaged, in a substantial amount to be determined at trial.

125.    As set forth in the preceding paragraphs, Defendants have knowingly violated 31 U.S.C. § 3729 *et seq.* and have thereby damaged the United States Government.  The United States (and the States) are entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than $5,500 and not more than $11,000 for each false claim submitted, paid or approved.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, as follows:

(a)    That the United States be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* provides;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant(s) caused to be presented (directly or indirectly) to the Government Healthcare Programs under the Federal False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That the Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

(e)    That the Court award such other and further relief as it deems proper.

## COUNT TWO

**FALSE CLAIMS ACT**
**FALSE RECORDS OR STATEMENTS**
**31 U.S.C.  §3729(a)(1)(B) and (C) (2010)**

126.    Relator repeats and realleges each allegation contained in paragraphs 1 through 117, above as if fully set forth herein.

127.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended.

128.    Defendants, and each of them, by and through their (its) officers, agents, employees, related companies, subsidiaries and holding companies, knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B) (2010).

129.    As set forth in the preceding paragraphs, Defendants' provision of tainted, contaminated and adulterated medical products directly and through other pharmaceutical manufacturers and compounders defrauded the United States by getting false and/or fraudulent Medicare and other Government health care claims paid in violation of 31 U.S.C. § 3729(a)(1)(C) (2010).

130.    Defendants, and each of them, by and through their (its) officers, agents, and employees, authorized and encouraged the actions of its various officers, agents, and employees to take the fraudulent actions set forth above.

131.    As a result of the acts of Defendants the United States Government reimbursed Defendants (and their customers) for pharmaceuticals, biologics, components and other medications, vaccines and medical items that it otherwise would not have paid.

132.    Every statement, billing and claim for payment submitted to the federal health insurance programs for each and every tainted, adulterated or contaminated pharmaceutical, biologic, component, medication, vaccine and medical items (whether billed directly or indirectly) represents a false or fraudulent statement.

133.    By reason of Defendant' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

134.    As set forth in the preceding paragraphs, Defendants, and each of them, have (has) knowingly violated 31 U.S.C. § 3729 *et seq*. and has thereby damaged the United States Government.  The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than $5,500 and not more than $11,000 for each false claim submitted, paid or approved.

WHEREFORE, Relators respectfully request this Court enter judgment against Defendant, as follows:

(a)    That the United States be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq*. provides;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant(s) caused to be presented to the Government Healthcare Programs under the Federal False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That the Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

(e)    That the Court award such other and further relief as it deems proper.

## COUNT THREE

### CALIFORNIA FALSE CLAIM ACT
### Cal. Gov. Code § 12650 *et seq.*

135.    Relator, acting in the name of and on behalf of the State of California, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

136.    This is a claim for treble damages and penalties under the California False Claims Act.

137.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the California State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medi-Cal and other California State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

138.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

139.    The State of California, by and through the California Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

140.    As a result, California state monies were lost through payments made in respect of the claims and other costs were sustained by the California State Government.

141.    Therefore, the California State Government has been damaged in an amount to be proven at trial.

142.    Additionally, the California State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

143.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Cal. Gov. Code § 12650 *et seq.* on behalf of himself and the State of California.

144.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of California be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government

36

Healthcare Programs under the California False Claims Act;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys'

fees, costs, and expenses which the Relator necessarily incurred in bringing and

pressing this case;

(d)     That Relator be awarded the maximum amount allowed pursuant to the California

False Claims Act; and

(e)     That the Court award such other and further relief as it deems proper.

## COUNT FOUR

### COLORADO MEDICAID FALSE CLAIMS ACT
### C.R.S.A. § 25.5-4-303.5 *et seq.*

145.    Relator, acting in the name of and on behalf of the State of Colorado, restates and

realleges each and every allegation contained in paragraphs 1 through 113 above as if each were

stated herein in its entirety and said allegations are incorporated herein by reference.

146.    This is a claim for treble damages and penalties under the Colorado Medicaid

False Claims Act.

147.    By virtue of the acts described herein, Defendants, and each of them, for the

purpose of defrauding the Colorado State Government, knowingly presented, or caused to be

presented false or fraudulent claims for payment or approval under Medicaid and other Colorado

State funded programs, and made, used and caused to be made and used false records and

statements material to false claims.

148.    Each claim for payment for a tainted, contaminated or adulterated medication or

component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's

customers or falsified records represents a false or fraudulent claim for payment.

149.     The State of Colorado, by and through the Colorado Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

150.     As a result, Colorado state monies were lost through payments made in respect of the claims and other costs were sustained by the Colorado State Government.

151.     Therefore, the Colorado State Government has been damaged in an amount to be proven at trial.

152.     Additionally, the Colorado State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

153.     Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to C.R.S.A. § 25.5-4-303.5 *et seq.* on behalf of himself and the State of Colorado.

154.     This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Colorado in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)     That the State of Colorado be awarded damages in the amount permitted by law;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government

Healthcare Programs under the Colorado Medicaid False Claims Act;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That Relator be awarded the maximum amount allowed pursuant to the Colorado False Claims Act; and

(e)     That the Court award such other and further relief as it deems proper.

## COUNT FIVE

### CONNECTICUT
### Conn. Gen. Stat. Ann. § 17b-301 Et Seq.

155.    Relator, acting in the name of and on behalf of the State of Connecticut, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

156.    This is a claim for treble damages and penalties under the Connecticut False Claims Act.

157.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Connecticut State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Connecticut State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

158.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

39

159. The State of Connecticut, by and through the Connecticut Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

160. As a result, Connecticut state monies were lost through payments made in respect of the claims and other costs were sustained by the Connecticut State Government.

161. Therefore, the Connecticut State Government has been damaged in an amount to be proven at trial.

162. Additionally, the Connecticut State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

163. Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.C.G.S.A. § 1-605 *et seq.* on behalf of himself and the State of Connecticut.

164. This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Connecticut in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a) That the State of Connecticut be awarded damages in the amount permitted by law;

(b)      That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Connecticut False Claims Act;

(c)      That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)      That Relator be awarded the maximum amount allowed pursuant to the Connecticut False Claims Act; and

(e)      That the Court award such other and further relief as it deems proper.

## COUNT SIX

**DELAWARE FALSE CLAIMS AND REPORTING ACT**
**6 Del. C. § 1201 et seq.**

165.    Relator, acting in the name of and on behalf of the State of Delaware, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

166.    This is a claim for treble damages and penalties under the Delaware False Claims and Reporting Act.

167.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Delaware State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Delaware State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

168.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

169.    The State of Delaware, by and through the Delaware Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

170.    As a result, Delaware state monies were lost through payments made in respect of the claims and other costs were sustained by the Delaware State Government.

171.    Therefore, the Delaware State Government has been damaged in an amount to be proven at trial.

172.    Additionally, the Delaware State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

173.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 6 Del. C. § 1201 *et seq*. on behalf of himself and the State of Delaware.

174.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Delaware in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of Delaware be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Delaware False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Delaware False Claims and Reporting Act; and

(e)    That the Court award such other and further relief as it deems proper.

<u>**COUNT SEVEN**</u>

**FLORIDA FALSE CLAIMS ACT**
**Fla. Stat. Ann. § 68.081,** *et seq.*

175.    Relator, acting in the name of and on behalf of the State of Florida, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

176.    This is a claim for treble damages and penalties under the Florida False Claims Act.

177.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Florida State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Florida State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

43

178.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

179.    The State of Florida, by and through the Florida Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

180.    As a result, Florida state monies were lost through payments made in respect of the claims and other costs were sustained by the Florida State Government.

181.    Therefore, the Florida State Government has been damaged in an amount to be proven at trial.

182.    Additionally, the Florida State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

183.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Fla. Stat. Ann. § 68.081, *et seq.* on behalf of himself and the State of Florida.

184.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Florida in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)     That the State of Florida be awarded damages in the amount permitted by law;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Florida False Claims Act;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That Relator be awarded the maximum amount allowed pursuant to the Florida False Claims Act; and

(e)     That the Court award such other and further relief as it deems proper.

## COUNT EIGHT

### GEORGIA TAXPAYER PROTECTION FALSE CLAIMS ACT
### Ga. Code Ann. §23-3-120 et seq.;

185.    Relator, acting in the name of and on behalf of the State of Georgia, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

186.    This is a claim for treble damages and penalties under the Georgia Taxpayer Protection False Claims and Reporting Act.

187.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Georgia State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Georgia State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

45

188.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

189.    The State of Georgia, by and through the Georgia Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

190.    As a result, Georgia state monies were lost through payments made in respect of the claims and other costs were sustained by the Georgia State Government.

191.    Therefore, the Georgia State Government has been damaged in an amount to be proven at trial.

192.    Additionally, the Georgia State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

193.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to O.C.G.A. §23-3-120 *et seq.*, on behalf of himself and the State of Georgia.

194.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Georgia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of Georgia be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Georgia Taxpayer Protection False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Georgia False Claims and Reporting Act; and

(e)    That the Court award such other and further relief as it deems proper.

## COUNT NINE

### HAWAII FALSE CLAIMS ACT
### HRS § 661-21 et seq.

195.    Relator, acting in the name of and on behalf of the State of Hawaii, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

196.    This is a claim for treble damages and penalties under the Hawaii False Claims Act.

197.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Hawaii State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Hawaii State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

198.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

199.    The State of Hawaii, by and through the Hawaii Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

200.    As a result, Hawaii state monies were lost through payments made in respect of the claims and other costs were sustained by the Hawaii State Government.

201.    Therefore, the Hawaii State Government has been damaged in an amount to be proven at trial.

202.    Additionally, the Hawaii State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

203.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to HRS § 661-21 *et seq*. on behalf of himself and the State of Hawaii.

204.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Hawaii in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)     That the State of Hawaii be awarded damages in the amount permitted by law;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Hawaii False Claims Act;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That Relator be awarded the maximum amount allowed pursuant to the Hawaii False Claims Act; and

(e)     That the Court award such other and further relief as it deems proper.

### COUNT TEN

**IOWA FALSE CLAIMS ACT**
**I.C.A. § 685.3 et seq.**

205.    Relator, acting in the name of and on behalf of the State of Iowa, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

206.    This is a claim for treble damages and penalties under the Iowa False Claims Act.

207.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Iowa State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Iowa State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

208.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

209.    The State of Iowa, by and through the Iowa Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

210.    As a result, Iowa state monies were lost through payments made in respect of the claims and other costs were sustained by the Iowa State Government.

211.    Therefore, the Iowa State Government has been damaged in an amount to be proven at trial.

212.    Additionally, the Iowa State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

213.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to I.C.A. § 685.3 *et seq.* on behalf of himself and the State of Iowa.

214.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Iowa in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of Iowa be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Iowa False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Iowa False Claims Act; and

(e)    That the Court award such other and further relief as it deems proper.

## COUNT ELEVEN

### ILLINOIS FALSE CLAIMS ACT
### 740 Ill. Comp. Stat. § 175/1-8

215.    Relator, acting in the name of and on behalf of the State of Illinois, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

216.    This is a claim for treble damages and penalties under the Illinois False Claims Act.

217.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Illinois State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Illinois State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

51

218.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

219.    The State of Illinois, by and through the Illinois Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

220.    As a result, Illinois state monies were lost through payments made in respect of the claims and other costs were sustained by the Illinois State Government.

221.    Therefore, the Illinois State Government has been damaged in an amount to be proven at trial.

222.    Additionally, the Illinois State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

223.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to I740 Ill. Comp. Stat. § 175/1-8 *et seq*. on behalf of himself and the State of Illinois.

224.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Illinois in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of Illinois be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Illinois False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Illinois False Claims Act; and

(e)    That the Court award such other and further relief as it deems proper.

## COUNT TWELVE

### INDIANA FALSE CLAIMS AND WHISTLEBLOWER PROTECTION ACT
### IC § 5-11-5.5- 1 *et seq.*

225.    Relator, acting in the name of and on behalf of the State of Indiana, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

226.    This is a claim for treble damages and penalties under the Indiana False Claims and Whistleblower Protection Act.

227.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Indiana State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Indiana State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

53

228.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

229.    The State of Indiana, by and through the Indiana Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

230.    As a result, Indiana state monies were lost through payments made in respect of the claims and other costs were sustained by the Indiana State Government.

231.    Therefore, the Indiana State Government has been damaged in an amount to be proven at trial.

232.    Additionally, the Indiana State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

233.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to IC § 5-11-5.5- 1 *et seq.* on behalf of himself and the State of Indiana.

234.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Indiana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of Indiana be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Indiana's False Claims and Whistleblower Protection Taxpayer Protection Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Indiana False Claims and Whistleblower Protection Act; and

(e)    That the Court award such other and further relief as it deems proper.

## COUNT THIRTEEN

### LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW
### La. Rev. Stat. Ann. § 46:439.1 *et seq.*

235.    Relator, acting in the name of and on behalf of the State of Louisiana, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

236.    This is a claim for treble damages and penalties under the Louisiana Medical Assistance Programs Integrity Law.

237.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Louisiana State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Louisiana

State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

238.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

239.    The State of Louisiana, by and through the Louisiana Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

240.    As a result, Louisiana state monies were lost through payments made in respect of the claims and other costs were sustained by the Louisiana State Government.

241.    Therefore, the Louisiana State Government has been damaged in an amount to be proven at trial.

242.    Additionally, the Louisiana State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

243.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to La. Rev. Stat. Ann. § 46:439.1 *et seq.* on behalf of himself and the State of Louisiana.

244.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Louisiana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)     That the State of Louisiana be awarded damages in the amount permitted by law;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Louisiana's Medical Assistance Programs Integrity Law;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That Relator be awarded the maximum amount allowed pursuant to the Louisiana Medical Assistance Programs Integrity Law; and

(e)     That the Court award such other and further relief as it deems proper.

## COUNT FOURTEEN

### MARYLAND FALSE HEALTH CLAIMS ACT
### M.D. Code§ 2-601 *et seq.*

245.     Relator, acting in the name of and on behalf of the State of Louisiana, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

246.     This is a claim for treble damages and penalties under the Maryland False Health Claims Act.

247.     By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Maryland State Government, knowingly presented, or caused to be

presented false or fraudulent claims for payment or approval under Medicaid and other Maryland State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

248.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

249.    The State of Maryland, by and through the Maryland Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

250.    As a result, Maryland state monies were lost through payments made in respect of the claims and other costs were sustained by the Maryland State Government.

251.    Therefore, the Maryland State Government has been damaged in an amount to be proven at trial.

252.    Additionally, the Maryland State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

253.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to M.D. Code§ 2-601 *et seq.* on behalf of himself and the State of Maryland.

254.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Maryland in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of Maryland be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Maryland's False Health Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Maryland False Health Claims Act; and

(e)    That the Court award such other and further relief as it deems proper.

### COUNT FIFTEEN

**MASSACHUSETTS FALSE CLAIMS ACT**
**Mass. Gen. Laws ch. 12, § 5A *et seq.***

255.    Relator, acting in the name of and on behalf of the Commonwealth of Massachusetts, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

256.    This is a claim for treble damages and penalties under the Massachusetts False Claims Act.

257.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Massachusetts Commonwealth Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Massachusetts Commonwealth funded programs, and made, used and caused to be made and used false records and statements material to false claims.

258.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

259.    The Commonwealth of Massachusetts, by and through the Massachusetts Medicaid program and other Commonwealth health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

260.    As a result, Massachusetts commonwealth monies were lost through payments made in respect of the claims and other costs were sustained by the Massachusetts Commonwealth Government.

261.    Therefore, the Massachusetts Commonwealth Government has been damaged in an amount to be proven at trial.

262.    Additionally, the Massachusetts Commonwealth Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

263.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Mass. Gen. Laws ch. 12, § 5A *et seq.* on behalf of himself and the Commonwealth of Massachusetts.

264.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the Commonwealth of Massachusetts in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the Commonwealth of Massachusetts be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the Commonwealth's Medicaid or other Government Healthcare Programs under the Massachusetts False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Massachusetts False Claims Act; and

(e)    That the Court award such other and further relief as it deems proper.

## COUNT SIXTEEN

### MICHIGAN MEDICAID FALSE CLAIM ACT
### M.C.L. §400.601 *et seq*.

265.     Relator, acting in the name of and on behalf of the State of Michigan, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

266.     This is a claim for treble damages and penalties under the Michigan Medicaid False Claims Act.

267.     By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Michigan State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Michigan State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

268.     Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

269.     The State of Michigan, by and through the Michigan Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

270.     As a result, Michigan state monies were lost through payments made in respect of the claims and other costs were sustained by the Michigan State Government.

271.    Therefore, the Michigan State Government has been damaged in an amount to be proven at trial.

272.    Additionally, the Michigan State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

273.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to M.C.L. §400.601 *et seq.* on behalf of himself and the State of Michigan.

274.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Michigan in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of Michigan be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Michigan Medicaid False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Michigan Medicaid False Claims Act; and

(e)      That the Court award such other and further relief as it deems proper.

## COUNT SEVENTEEN

### MINNESOTA FALSE CLAIMS ACT
### Minn. Stat. Ann. § 15C.01 *et seq.*

275.      Relator, acting in the name of and on behalf of the State of Minnesota, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

276.      This is a claim for treble damages and penalties under the Minnesota False Claims Act.

277.      By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Minnesota State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Minnesota State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

278.      Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

279.      The State of Minnesota, by and through the Minnesota Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

280.      As a result, Minnesota state monies were lost through payments made in respect of the claims and other costs were sustained by the Minnesota State Government.

281.    Therefore, the Minnesota State Government has been damaged in an amount to be proven at trial.

282.    Additionally, the Minnesota State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

283.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Minn. Stat. Ann. § 15C.01 *et seq.* on behalf of himself and the State of Minnesota.

284.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Minnesota in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of Minnesota be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Minnesota False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Minnesota False Claims Act; and

(e)      That the Court award such other and further relief as it deems proper.

## COUNT EIGHTEEN

### MONTANA FALSE CLAIMS ACT
### Mont. Code Ann. § 17-8-401 *et seq*.

285.      Relator, acting in the name of and on behalf of the State of Montana, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

286.      This is a claim for treble damages and penalties under the Montana False Claims Act.

287.      By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Montana State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Montana State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

288.      Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

289.      The State of Montana, by and through the Montana Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

290.      As a result, Montana state monies were lost through payments made in respect of the claims and other costs were sustained by the Montana State Government.

291.    Therefore, the Montana State Government has been damaged in an amount to be proven at trial.

292.    Additionally, the Montana State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

293.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Mont. Code Ann. § 17-8-401 *et seq*. on behalf of himself and the State of Montana.

294.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Montana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of Montana be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Montana False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Montana False Claims Act; and

(e)      That the Court award such other and further relief as it deems proper.

**COUNT NINETEEN**

**NEVADA FALSE CLAIMS ACT**
**Nev. Rev. Stat. Ann. § 357.010 *et seq.***

295.    Relator, acting in the name of and on behalf of the State of Nevada, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

296.    This is a claim for treble damages and penalties under the Nevada False Claims Act.

297.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Nevada State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Nevada State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

298.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

299.    The State of Nevada, by and through the Nevada Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

300.    As a result, Nevada state monies were lost through payments made in respect of the claims and other costs were sustained by the Nevada State Government.

301.    Therefore, the Nevada State Government has been damaged in an amount to be proven at trial.

302.    Additionally, the Nevada State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

303.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Nev. Rev. Stat. Ann. § 357.010 *et seq.* on behalf of himself and the State of Nevada.

304.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Nevada in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of Nevada be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Nevada False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Nevada False Claims Act; and

(e)      That the Court award such other and further relief as it deems proper.

## COUNT TWENTY

**NEW HAMPSHIRE FALSE CLAIMS ACT**
**N.H. Rev. Stat. Ann. §167:61-b *et seq*.**

305.      Relator, acting in the name of and on behalf of the State of New Hampshire, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

306.      This is a claim for treble damages and penalties under the New Hampshire False Claims Act.

307.      By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the New Hampshire State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other New Hampshire State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

308.      Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

309.      The State of New Hampshire, by and through the New Hampshire Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

310.      As a result, New Hampshire state monies were lost through payments made in respect of the claims and other costs were sustained by the New Hampshire State Government.

311.    Therefore, the New Hampshire State Government has been damaged in an amount to be proven at trial.

312.    Additionally, the New Hampshire State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

313.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.H. Rev. Stat. Ann. §167:61-b *et seq.* on behalf of himself and the State of New Hampshire.

314.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of New Hampshire in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of New Hampshire be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the New Hampshire False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That Relator be awarded the maximum amount allowed pursuant to the New

Hampshire False Claims Act; and

(e)     That the Court award such other and further relief as it deems proper.

## COUNT TWENTY-ONE

### NEW JERSEY FALSE CLAIMS ACT
### N.J. Stat. Ann.§ 2A:32C-1 *et seq.*

315.     Relator, acting in the name of and on behalf of the State of New Jersey, restates

and realleges each and every allegation contained in paragraphs 1 through 117 above as if each

were stated herein in its entirety and said allegations are incorporated herein by reference.

316.     This is a claim for treble damages and penalties under the New Jersey False

Claims Act.

317.     By virtue of the acts described herein, Defendants, and each of them, for the

purpose of defrauding the New Jersey State Government, knowingly presented, or caused to be

presented false or fraudulent claims for payment or approval under Medicaid and other New

Jersey State funded programs, and made, used and caused to be made and used false records and

statements material to false claims.

318.     Each claim for payment for a tainted, contaminated or adulterated medication or

component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's

customers or falsified records represents a false or fraudulent claim for payment.

319.     The State of New Jersey, by and through the New Jersey Medicaid program and

other State health care programs, was unaware of the falsity of the records, statements and claims

made or caused to be made by the Defendants and paid and continues to pay the claims that

would not be paid but for Defendants' wrongful actions and omissions.

320.    As a result, New Jersey state monies were lost through payments made in respect of the claims and other costs were sustained by the New Jersey State Government.

321.    Therefore, the New Jersey State Government has been damaged in an amount to be proven at trial.

322.    Additionally, the New Jersey State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

323.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.J. Stat. Ann.§ 2A:32C-1 *et seq.* on behalf of himself and the State of New Jersey.

324.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of New Jersey in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of New Jersey be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the New Jersey False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the New Jersey False Claims Act; and

(e)    That the Court award such other and further relief as it deems proper.

## COUNT TWENTY-TWO

### NEW MEXICO MEDICAID FALSE CLAIMS ACT
### N.M. Stat. Ann. § 27-14-1 *et seq.*

325.    Relator, acting in the name of and on behalf of the State of New Mexico, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

326.    This is a claim for treble damages and penalties under the New Mexico Medicaid False Claims Act.

327.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the New Mexico State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other New Mexico State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

328.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

329.    The State of New Mexico, by and through the New Mexico Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

330.    As a result, New Mexico state monies were lost through payments made in respect of the claims and other costs were sustained by the New Mexico State Government.

5.    Therefore, the New Mexico State Government has been damaged in an amount to be proven at trial.

331.    Additionally, the New Mexico State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

332.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.M. Stat. Ann. § 27-14-1 *et seq.* on behalf of himself and the State of New Mexico.

333.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of New Mexico in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of New Mexico be awarded damages in the amount permitted by law;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the New Mexico Medicaid False Claims Act;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That Relator be awarded the maximum amount allowed pursuant to the New Mexico Medicaid False Claims Act; and

(e)     That the Court award such other and further relief as it deems proper.

## COUNT TWENTY-THREE

### NEW YORK FALSE CLAIMS ACT
### N.Y. State Fin. Law§ 187 *et seq.*

334.     Relator, acting in the name of and on behalf of the State of Illinois, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

335.     This is a claim for treble damages and penalties under the Illinois False Claims Act.

336.     By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Illinois State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Illinois State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

337.     Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

338.     The State of Illinois, by and through the Illinois Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

339.     As a result, Illinois state monies were lost through payments made in respect of the claims and other costs were sustained by the Illinois State Government.

340.     Therefore, the Illinois State Government has been damaged in an amount to be proven at trial.

341.     Additionally, the Illinois State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

342.     Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.Y. State Fin. Law§ 187 *et seq.* on behalf of himself and the State of New York.

343.     This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of New York in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)     That the State of New York be awarded damages in the amount permitted by law;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the New York False Claims Act;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That Relator be awarded the maximum amount allowed pursuant to the New York False Claims Act; and

(e)     That the Court award such other and further relief as it deems proper.

## COUNT TWENTY-FOUR

### NORTH CAROLINA FALSE CLAIMS ACT
### N.C.G.S.A. §1-605 *et seq.*

344.     Relator, acting in the name of and on behalf of the State of North Carolina, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

345.     This is a claim for treble damages and penalties under the North Carolina False Claims Act.

346.     By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the North Carolina State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other North Carolina State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

347.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

348.    The State of North Carolina, by and through the North Carolina Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

349.    As a result, North Carolina state monies were lost through payments made in respect of the claims and other costs were sustained by the North Carolina State Government.

350.    Therefore, the North Carolina State Government has been damaged in an amount to be proven at trial.

351.    Additionally, the North Carolina State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

352.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.C.G.S.A. §1-605 *et seq.* on behalf of himself and the State of North Carolina.

353.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of North Carolina in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of North Carolina be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the North Carolina False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the North Carolina False Claims Act; and

(e)    That the Court award such other and further relief as it deems proper.

## COUNT TWENTY-FIVE

### OKLAHOMA MEDICAID FALSE CLAIMS ACT
Okla. Stat. Ann. 63 §5053.l *et seq.*

354.    Relator, acting in the name of and on behalf of the State of Oklahoma, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

355.    This is a claim for treble damages and penalties under the Oklahoma Medicaid False Claims Act.

356.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Oklahoma State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other

Oklahoma State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

357.   Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

358.   The State of Oklahoma, by and through the Oklahoma Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

359.   As a result, Oklahoma state monies were lost through payments made in respect of the claims and other costs were sustained by the Oklahoma State Government.

360.   Therefore, the Oklahoma State Government has been damaged in an amount to be proven at trial.

361.   Additionally, the Oklahoma State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

362.   Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Okla. Stat. Ann. 63 §5053.l *et seq.* on behalf of himself and the State of Oklahoma.

363.   This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Oklahoma in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)     That the State of Oklahoma be awarded damages in the amount permitted by law;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Oklahoma Medicaid False Claims Act;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That Relator be awarded the maximum amount allowed pursuant to the Oklahoma Medicaid False Claims Act; and

(e)     That the Court award such other and further relief as it deems proper.

## COUNT TWENTY-SIX

### RHODE ISLAND STATE FALSE CLAIMS ACT
### R.I. Gen. Laws § 9-1.1-1 et *seq.*

364.     Relator, acting in the name of and on behalf of the State of Rhode Island, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

365.     This is a claim for treble damages and penalties under the Rhode Island False Claims Act.

366.     By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Rhode Island State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Rhode

Island State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

367.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

368.    The State of Rhode Island, by and through the Rhode Island Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

369.    As a result, Rhode Island state monies were lost through payments made in respect of the claims and other costs were sustained by the Rhode Island State Government.

370.    Therefore, the Rhode Island State Government has been damaged in an amount to be proven at trial.

371.    Additionally, the Rhode Island State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

372.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to R.I. Gen. Laws § 9-1.1-1 et seq. on behalf of himself and the State of Rhode Island.

373.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Rhode Island in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a) That the State of Rhode Island be awarded damages in the amount permitted by law;

(b) That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Rhode Island False Claims Act;

(c) That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d) That Relator be awarded the maximum amount allowed pursuant to the Rhode Island False Claims Act; and

(e) That the Court award such other and further relief as it deems proper.

## COUNT TWENTY-SEVEN

### TEXAS MEDICAID FRAUD PREVENTION LAW
### Tex. Hum. Res. Code Ann. § 36.001 *et seq.*

374. Relator, acting in the name of and on behalf of the State of Texas, restates and realleges each and every allegation contained in paragraphs 1 through 113 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

375. This is a claim for treble damages and penalties under the Texas Medicaid Fraud Prevention Law.

376. By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Texas State Government, knowingly presented, or caused to be

presented false or fraudulent claims for payment or approval under Medicaid and other Texas State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

377.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

378.    The State of Texas, by and through the Texas Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

379.    As a result, Texas state monies were lost through payments made in respect of the claims and other costs were sustained by the Texas State Government.

380.    Therefore, the Texas State Government has been damaged in an amount to be proven at trial.

381.    Additionally, the Texas State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

382.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Tex. Hum. Res. Code Ann. § 36.101 *et seq.* on behalf of himself and the State of Texas.

383.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Texas in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of Texas be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Texas Medicaid Fraud Prevention Law;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Texas Medicaid Fraud Prevention Law; and

(e)    That the Court award such other and further relief as it deems proper.

## COUNT TWENTY-EIGHT

### TENNESSEE FALSE CLAIMS ACT
### T.C.A. § 71-5-182(a) *et seq.*

384.    Relator, acting in the name of and on behalf of the State of Tennessee, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

385.    This is a claim for treble damages and penalties under the Tennessee False Claims Act.

386.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Tennessee State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Tennessee State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

387.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

388.    The State of Tennessee, by and through the Tennessee Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

389.    As a result, Tennessee state monies were lost through payments made in respect of the claims and other costs were sustained by the Tennessee State Government.

390.    Therefore, the Tennessee State Government has been damaged in an amount to be proven at trial.

391.    Additionally, the Tennessee State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

392.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to T.C.A. § 71-5-182(a) *et seq.* on behalf of himself and the State of Tennessee.

393. This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Tennessee in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a) That the State of Tennessee be awarded damages in the amount permitted by law;

(b) That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Tennessee False Claims Act;

(c) That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d) That Relator be awarded the maximum amount allowed pursuant to the Tennessee False Claims Act; and

(e) That the Court award such other and further relief as it deems proper.

## COUNT TWENTY-NINE

### VIRGINIA FRAUD AGAINST TAXPAYERS ACT
### Va. Code Ann. § 8.01-216.1 *et seq.*

394. Relator, acting in the name of and on behalf of the Commonwealth of Virginia, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

395. This is a claim for treble damages and penalties under the Virginia Fraud Against Tax Payers Act.

396.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Virginia Commonwealth Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Virginia State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

397.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

398.    The Commonwealth of Virginia, by and through the Virginia Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

399.    As a result, Virginia Commonwealth monies were lost through payments made in respect of the claims and other costs were sustained by the Virginia State Government.

400.    Therefore, the Virginia Commonwealth Government has been damaged in an amount to be proven at trial.

401.    Additionally, the Virginia Commonwealth Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

402.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Va. Code Ann. § 8.01-216.1 *et seq.* on behalf of himself and the Commonwealth of Virginia.

403. This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the Commonwealth of Virginia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a) That the Commonwealth of Virginia be awarded damages in the amount permitted by law;

(b) That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the Commonwealth's Medicaid or other Government Healthcare Programs under the Virginia Fraud Against Tax Payers Act;

(c) That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d) That Relator be awarded the maximum amount allowed pursuant to the Virginia Fraud Against Tax Payers Act; and

(e) That the Court award such other and further relief as it deems proper.

## COUNT THIRTY

**WASHINGTON MEDICAID FRAUD FALSE CLAIMS ACT**
**RCWA 74.66.005 *et seq.***

404. Relator, acting in the name of and on behalf of the State of Washington, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

405.     This is a claim for treble damages and penalties under the Washington Medicaid Fraud False Claims Act.

406.     By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Washington State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Washington State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

407.     Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

408.     The State of Washington, by and through the Washington Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

409.     As a result, Washington state monies were lost through payments made in respect of the claims and other costs were sustained by the Washington State Government.

410.     Therefore, the Washington State Government has been damaged in an amount to be proven at trial.

411.     Additionally, the Washington State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

412.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to RCWA 74.66.005 *et seq.* on behalf of himself and the State of Washington.

413.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Washington in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of Washington be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Washington Medicaid Fraud False Claims Act;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Washington Medicaid Fraud False Claims Act; and

(e)    That the Court award such other and further relief as it deems proper.

## COUNT THIRTY-ONE

**WISCONSIN FALSE CLAIMS FOR MEDICAL ASSISTANCE LAW**
**Wis. Stat. § 20. 931 *et seq*.**

414.    Relator, acting in the name of and on behalf of the State of Wisconsin, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

415.    This is a claim for treble damages and penalties under the Wisconsin False Claims for Medical Assistance Law.

416.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Wisconsin State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Wisconsin State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

417.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

418.    The State of Wisconsin, by and through the Wisconsin Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

419.    As a result, Wisconsin state monies were lost through payments made in respect of the claims and other costs were sustained by the Wisconsin State Government.

420.    Therefore, the Wisconsin State Government has been damaged in an amount to be proven at trial.

421.    Additionally, the Wisconsin State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

422.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Wis. Stat. § 20. 931 *et seq.* on behalf of himself and the State of Wisconsin.

423.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Wisconsin in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the State of Wisconsin be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Wisconsin False Claims for Medical Assistance Law;

(c)    That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)      That Relator be awarded the maximum amount allowed pursuant to the Wisconsin False Claims for Medical Assistance Law; and

(e)      That the Court award such other and further relief as it deems proper.

### COUNT THIRTY-TWO

**VERMONT FALSE CLAIMS ACT**
**Vt. Stat. Ann. tit. 32, §§ 630 *et seq.***

424.    Relator, acting in the name of and on behalf of the State of Vermont, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

425.    This is a claim for treble damages and penalties under the Vermont False Claims Act.

426.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the Vermont State Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other Vermont State funded programs, and made, used and caused to be made and used false records and statements material to false claims.

427.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

428.    The State of Vermont, by and through the Vermont Medicaid program and other State health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

429.     As a result, Vermont state monies were lost through payments made in respect of the claims and other costs were sustained by the Vermont State Government.

430.     Therefore, the Vermont State Government has been damaged in an amount to be proven at trial.

431.     Additionally, the Vermont State Government is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

432.     Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Vt. Stat. Ann. tit. 32, §§ 630 *et seq.* on behalf of himself and the State of Vermont.

433.     This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of Vermont in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)     That the State of Vermont be awarded damages in the amount permitted by law;

(b)     That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the State's Medicaid or other Government Healthcare Programs under the Vermont False Claims Act;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)    That Relator be awarded the maximum amount allowed pursuant to the Vermont False Claims Act; and

(e)    That the Court award such other and further relief as it deems proper.

## COUNT THIRTY-THREE

### DISTRICT OF COLUMBIA FALSE CLAIMS ACT
### D.C. Code Ann. § 2-381.01 *et seq.*

434.    Relator, acting in the name of and on behalf of the District of Columbia, restates and realleges each and every allegation contained in paragraphs 1 through 117 above as if each were stated herein in its entirety and said allegations are incorporated herein by reference.

435.    This is a claim for treble damages and penalties under the District of Columbia False Claims Act.

436.    By virtue of the acts described herein, Defendants, and each of them, for the purpose of defrauding the District of Columbia's Government, knowingly presented, or caused to be presented false or fraudulent claims for payment or approval under Medicaid and other District funded programs, and made, used and caused to be made and used false records and statements material to false claims.

437.    Each claim for payment for a tainted, contaminated or adulterated medication or component, drug, biologic or other biopharmaceutical billed directly or indirectly through KBI's customers or falsified records represents a false or fraudulent claim for payment.

438.    The District of Columbia, by and through the District's Medicaid program and other District health care programs, was unaware of the falsity of the records, statements and claims made or caused to be made by the Defendants and paid and continues to pay the claims that would not be paid but for Defendants' wrongful actions and omissions.

97

439.    As a result, District of Columbia monies were lost through payments made in respect of the claims and other costs were sustained by the District.

440.    Therefore, the District of Columbia has been damaged in an amount to be proven at trial.

441.    Additionally, the District of Columbia is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by Defendants and arising from Defendants' misconduct as described herein.

442.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to D.C. Code Ann.§ 2-381.01 *et seq*. on behalf of himself and the District of Columbia.

443.    This Court is requested to accept pendant jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the District of Columbia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)    That the District of Columbia be awarded damages in the amount permitted by law;

(b)    That civil penalties of $11,000 be imposed for each and every false claim that Defendant caused to be presented to the District's Medicaid or other Government Healthcare Programs under the District of Columbia False Claims Act;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That Relator be awarded the maximum amount allowed pursuant to the District of Columbia False Claims Act; and

(e)     That the Court award such other and further relief as it deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of Federal Rules of Civil Procedure, Plaintiffs and Relator hereby demand a trial by jury.

Dated: April 4, 2017

Respectfully submitted,

Mark Herbert Schlein, Trial Counsel
Admitted to the District of Colorado
Florida Bar No. 0000700
Diane Marger Moore, Trial Counsel
Admitted to the District of Colorado
Florida Bar No. 268364
BAUM HEDLUND ARISTEI & GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel: 310-207-3233
Fax: 310-820-7444
mschlein@baumhedlundlaw.com

*Attorneys for Relator*